UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                             DECISION AND ORDER
              v.                                  05-CR-231A

ANN CAIN,

                        Defendant.

---

## INTRODUCTION

Currently before the Court are motions by defendant Ann Cain to:

(1) dismiss the indictment on speedy trial grounds; (2) for judgment of acquittal

pursuant to Rule 29; and (3) for a new trial pursuant to Rule 33.


## BACKGROUND

On September 6, 2005, a four-count indictment was returned against

Ann Cain, her husband, David Cain, Sr., and Cheryl Wagner.  As relevant here,

the indictment charged Ann Cain with one count of knowingly attempting to

corruptly persuade Larry Kropp with the intent to influence his grand jury

testimony, in violation of 18 U.S.C. § 1512(b)(1) and (b)(2)(D) (Count 1), and one

count of knowingly attempting to corruptly persuade Sean Cooper with the intent

to hinder, delay or prevent communication of information to law enforcement

officials concerning the commission or possible commission of federal crimes, in

1

violation of 18 U.S.C. § 1512(b)(3) (Count 3).  Ann Cain was not charged in

Counts 2 or 4.

The case was referred to Magistrate Judge H. Kenneth Schroeder,

Jr., for pretrial proceedings.  On December 2, 2005, David Cain, Sr., filed a

motion for discovery, dismissal of the indictment and for severance.  On

December 5, 2005, Ann Cain moved for severance and for a bill of particulars.

Magistrate Judge Schroeder held a hearing on the motions on February 21, 2006.

On July 7, 2006, Judge Schroeder issued orders denying the motions in their

entirety.

On September 5, 2006, Ann Cain filed a motion to dismiss the

indictment on speedy trial grounds.  The government filed its response on

September 6, 2006.[1]  Trial of this matter commenced on September 11, 2006.

On September 14, 2006, the jury acquitted Ann Cain of Count 1, and found her

guilty of Count 3.

On November 16, 2006, Ann Cain filed a motion for judgment of

acquittal pursuant to Rule 29, and a motion for a new trial pursuant to Rule 33.

The government filed its response on November 30, 2006 and the Court deemed

the motion submitted without argument.

---

[1]  Because the motion was filed on the eve of trial, the Court deferred ruling on the
motion and proceeded with the trial as scheduled.

**DISCUSSION**

I.   **Speedy Trial Motion**

The Speedy Trial Act mandates that trial on a criminal charge "shall

commence within seventy days from the filing date (and making public) of the

information or indictment" or from the date of the defendant's initial appearance

before the court.  See 18 U.S.C. § 3161(c)(1).  The Act also recognizes that

"criminal cases vary widely and that there are valid reasons for greater delay in

particular cases."  Zedner v. United States, 126 S. Ct. 1976, 1983 (2006).

Accordingly, Congress has enumerated several "periods of delay" that are

excluded from the speedy trial clock.  See 18 U.S.C. § 3161(h).  For example, the

statute excludes:  (1) the time period from the filing of a motion through the

conclusion of a hearing on or other prompt disposition of the motion, see 18

U.S.C. § 3161(h)(1)(F); and (2) delay, not to exceed 30 days, reasonably

attributable to any period during which a proceeding concerning a defendant is

actually under advisement by the Court, see id. § 3161(h)(1)(J).

In addition, the Act excludes "[a]ny period of delay resulting from a

continuance granted by any judge" where the judge finds that "the ends of justice

served by taking such action outweigh the best interest of the public and the

defendant in a speedy trial."  See id. § 3161(h)(8)(A).  Any such finding "must be

made, if only in the judge's mind, before granting the continuance," and "must be

put on the record by the time a district court rules on a defendant's motion to

3

dismiss" pursuant to the Speedy Trial Act.  Zedner, 126 S. Ct. at 1989.  Among

the list of factors that a district court must consider in deciding whether to grant

an ends-of-justice continuance are a defendant's need for reasonable time to

obtain counsel, continuity of counsel, and effective preparation of counsel.  See

18 U.S.C. § 3161(h)(8)(A)).  Further, an exclusion of time in the interests of

justice may be granted "by any judge on his own motion or at the request of the

defendant or his counsel or at the request of the attorney for the Government."

See 18 U.S.C. § 3161(h)(8)(A).  Thus, "[t]he [Speedy Trial] Act does not require

the consent of the defendant or his counsel."  United States v. Asubonteng, 895

F.2d 424, 427 (7th Cir.), cert.denied, 494 U.S. 1089 (1990).  Nor may a defendant

waive application of the Act,  Zedner, 126 S. Ct. at 1984, because "the public has

at least as great an interest as the defendant in an expeditious criminal trial."

United States v. Barnes, 159 F.3d 4, 13 (1st Cir. 1998).

          A defendant seeking to dismiss an indictment on the basis that he

was not brought to trial within the time limit required by the Speedy Trial Act has

"the burden of proof of supporting such motion but the Government [has] the

burden of going forward with the evidence in connection with any exclusion of

time [based upon the unavailability of witnesses]."  See 18 U.S.C. § 3162(a)(2);

see also Zedner, 126 S. Ct. at 1984.

4

As noted above, Ann Cain moves to dismiss the indictment on the ground that more than seventy non-excludable delays had elapsed before trial commenced on September 11, 2006.  She primarily challenges the delay that occurred in resolving her pretrial motion filed on December 5, 2005.  She appears to concede that the filing of that motion tolled the speedy trial clock, but argues that it should have been resolved more promptly and without a hearing.

With regard to the issue of whether a hearing was necessary, the Court notes that co-defendant David Cain, Sr. had filed a motion three days earlier, on December 2, 2005, and had requested a hearing on his motion.  See Dkt. No. 29 (Notice of Motion requesting a hearing at a time and place to be assigned by the Court).  The filing of David Cain, Sr.'s motion tolled the speedy trial clock as to *all* defendants, including Ann Cain.  See United States v. Pena, 793 F.2d 486, 489 (2d Cir. 1986) (holding that cases involving multiple defendants are governed by a single speedy trial clock, and pursuant to § 3161(h)(7), any delay attributable to any one defendant is charged against the single clock, thus making the delay applicable to all defendants).  The clock remained tolled until February 21, 2006, when Magistrate Judge Schroeder held a hearing on that motion.  See 18 U.S.C. § 3161(h)(1)(F); Henderson v. United States, 476 U.S. 321, 329-30 (1986) ("[W]hen a pretrial motion requires a hearing . . . subsection (F) on its face excludes the entire period between the filing of the motion and the conclusion of the hearing," whether or not a delay in holding that

hearing is "reasonably necessary.").  Since David Cain, Sr. had requested a

hearing on his motion, it cannot now be argued that a hearing was unnecessary.

See United States v. Salimonu, 182 F.3d 63, 67-68 (1st Cir. 1999) ("Because [the

defendant] requested a hearing in this case, we properly can assume that such a

hearing was required for section 3161(h)(1)(F) purposes").  In any event, absent

evidence of abuse – of which there is none – this Court finds it appropriate to

defer to Magistrate Judge Schroeder's determination that a hearing was required.

Accordingly, the time between December 2, 2005 through February 21, 2006 was

tolled pursuant to § 3161(h)(1)(F).  Further, the 30-day period following the

hearing (from February 21, 2006 to March 21, 2006) was tolled pursuant to §

3161(h)(1)(J).

Ordinarily, the speedy trial clock would have resumed on March 21,

2006.  However, on March 15, 2006, Magistrate Judge Schroeder issued an

order excluding time from the speedy trial clock until April 22, 2006 pursuant to 18

U.S.C. § 3161(h)(8).  In that order, Judge Schroeder found that the motions were

complex and that the ends of justice would be served by granting a continuance

and outweighed the best interests of the defendants and the public in a speedy

trial.  See Dkt. No. 48.  The order also clearly advised the parties as follows:

> This order "puts defense counsel on notice that the speedy trial clock
> has been stopped," and it ensures that, "[i]f for any reason counsel
> believes that [an exclusion] is inappropriate, an objection may be
> raised and a record made" of the objection. *United States v.*

6

*Tunnesen*, 763 F.2d 74, 78 (2d Cir. 1985); *see also United States v. Kiszewski*, 877 F.2d 210, 215 (2d Cir. 1989) (prosecutors are responsible along with the court in paying attention to *Tunnesen*.)

None of the defendants objected to that order.  Magistrate Judge Schroeder then issued several similar orders, excluding time, in total, from April 10, 2006 until July 10, 2006.  Each subsequent order advised the parties of his determination that the matters before him were complex, and that the interests of justice favored exclusion.  Each order also advised the parties that an objection should be filed if he or she believed the exclusion was inappropriate.  None of the defendants objected to any of those exclusions.

Ann Cain now seeks to challenge those ends-of-justice exclusions as improper.  She argues that under § 3161(h)(1)(J), the Court may exclude only thirty days after a motion is submitted.  The defendant is correct that subsection (J) automatically excludes up to thirty days following a hearing during which the Court may decide the motion.  However, if a court cannot decide a pending motion within the thirty days that Section 3161(h)(1)(J) provides, "it is always open to him to find that the interest of justice is best served by granting a continuance under § 3161(h)(8) for the excess period."  United States v. Bufalino, 683 F.2d 639, 645 (2d Cir. 1982).  Indeed, Congress explicitly recognized the authority of a judge to grant an ends-of-justice continuance to increase the "under advisement" period set forth in subsection (J).  See H.R. Rep. No. 1508, 93d

Cong., 2d Sess. 33, reprinted in 1974 U.S. Code Cong. & Admin. News 7401, 7426 (explaining that the "under advisement" provisions of subsection (J) "in no way affects the prerogative of the court to continue cases upon its own motion, where due to the complexity or unusual nature of the case, additional time is needed to consider matters before the Court . . . ."); see also United States v. Mentz, 840 F.2d 315, 326, at n.22 (6th Cir. 1988); United States v. Gallardo, 773 F.2d 1496, 1503 (9th Cir. 1984).  Courts have also upheld the authority of a judge to grant several consecutive ends-of-justice continuances as long as the circumstances so warrant.  See, e.g., Gallardo, 773 F.2d at 1505 (finding no abuse of discretion where court granted three consecutive ends-of-justice continuances).  Although a court has flexibility in excluding time under § 3161(h)(8), it must give sufficient reasons for the exclusion in order to prevent abuse.  See Zedner, 126 S. Ct. at 1989;  United States v. Tunnessen, 763 F.2d 74, 76 (2d Cir. 1985).

Here, Magistrate Judge Schroeder advised the parties on each occasion that he was granting a continuance because the pending motions were complex and because he believed the interests of justice served by granting the continuance outweighed the defendants' and the public's interests in a speedy trial.  None of the defendants challenged his determination that a continuance was appropriate even though they were advised to do so if they disputed the exclusion.  It was not until the eve of trial that any of the defendants raised any

8

issue relating to those exclusions.  Although a defendant may not waive

application of the Speedy Trial Act, a defendant can forfeit the ability to challenge

the *basis* of an ends-of-justice exclusion by failing to make a timely objection.

Any objection to the Magistrate Judge's complexity determination should have

been raised shortly after that determination was made.  The failure to do so

precludes the defendant from raising it now.  See U.S. v. Twitty, 107 F.3d 1482,

1489 (11th Cir.), cert. denied, 522 U.S. 902 (1997) (upholding an ends-of justice

continuance and noting that the defendant could have objected but failed to do

so); United States v. Wellington, 754 F.2d 1457, 1467 (9th Cir.), cert. denied, 474

U.S. 1032 (1985) (finding that an exclusion based upon the court's finding that

the case was complex was proper, and noting that the defendant failed to timely

object to that determination).

        Accordingly, the defendant's motion to dismiss on speedy trial

grounds is denied.


**2.      Rule 29 and Rule 33 Motions**

The standard for judgment of acquittal under Rule 29 is well

established in this Circuit.

> In considering a motion for judgment of acquittal, the court must view
> the evidence presented in the light most favorable to the
> government.  All permissible inferences must be drawn in the

government's favor.  In addition, the court must be careful to avoid usurping the role of the jury.  [U]pon a motion for judgment of acquittal, the [c]ourt must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.  Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.  In fact, if the court concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter.

United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999) (internal quotations

and citations omitted).  A defendant challenging the sufficiency of the evidence

"faces an uphill battle and bears a very heavy burden . . .."  United States v.

Crowley, 318 F.3d 401, 407 (2d Cir. 2003) (internal quotations and citations

omitted).

The standard for a new trial under Rule 33 is equally well established.

Rule 33 . . . states that "the court may grant a new trial to [a] defendant if the interests of justice so require."  Fed. R. Crim. P. 33. The rule by its terms gives the trial court broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.  The district court must strike a balance between weighing the evidence and credibility of witnesses and not wholly usurp[ing] the role of the jury.  Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, [i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment.  An example of exceptional circumstances is where testimony is patently incredible or defies physical realities, although the district court's rejection of trial testimony by itself does not automatically permit Rule 33 relief.

10

> The ultimate test on a Rule 33 motion is whether letting a guilty
> verdict stand would be a manifest injustice.  The trial court must be
> satisfied that competent, satisfactory and sufficient evidence in the
> record supports the jury verdict.  The district court must examine the
> entire case, take into account all facts and circumstances, and make
> an objective evaluation.  There must be a real concern that an
> innocent person may have been convicted.  Generally, the trial court
> has broader discretion to grant a new trial under Rule 33 than to
> grant a motion for acquittal under Rule 29, but it nonetheless must
> exercise the Rule 33 authority sparingly and in the most
> extraordinary circumstances.

United States v. Ferguson, 246 F.3d 129, 133-34 (2d Cir. 2001) (internal

quotations and citations omitted).

Viewing the evidence in the light most favorable to the government

and drawing all inferences in its favor, the Court finds that sufficient evidence

exists to support the jury's verdict.  The defendant was convicted of Count 3,

tampering with witness Sean Cooper in violation of 18 U.S.C. § 1512(b)(3).

Niagara County Investigator Patrick Weidel was investigating criminal activities

allegedly committed by Cooper and the defendant's son, David Cain, Jr.  The

evidence at trial showed that Weidel asked Cooper to come down to the Sheriff's

Office for an interview on February 24, 2005.  On his way to the Sheriff's Office

that day, Cooper stopped at Ann Cain's place of employment.  Cooper told her

that he was headed to the Sheriff's Office and that she should "tell Dave [referring

to her son, David Cain, Jr.] thanks for getting me in this shit."  Ann Cain told

Cooper "not to tell those fuckers anything" and "[i]f they say you did something, call them fucking liars."  Tr. of Cooper's Trial Testimony, at 13-14.

Cooper then went to the Sheriff's Office where he met with Weidel and Special Agent Jason Bernhard of the Bureau of Alcohol, Tobacco, Firearms and Explosives.  During the interview, Cooper initially lied to Weidel and Bernhard, then recanted and told the agents that he had committed certain criminal activities with David Cain, Jr.

The following day, Ann Cain appeared unexpectedly at Cooper's residence.  She asked Cooper what he had told the agents.  Cooper "lied" to her and told her that he "didn't say anything," but that the agents already knew about what he and David Cain, Jr., had done.  Id. at 17.  Ann Cain told Cooper if he needed a lawyer, she would help him get one, but that he should "not to tell them fuckers nothing [sic]," referring to "[the] cops and the feds"  Id. at 19, 39.

To find the defendant guilty, the jury was required to find that Ann Cain "corruptly persuaded" Cooper, knowingly, and with an intent to delay, hinder or prevent Cooper from communicating information to law enforcement officers relating to the commission of possible federal offenses.  Based upon Cooper's testimony, sufficient evidence exists to support the jury's verdict that the defendant violated § 1512(b)(3) when she instructed Cooper not to tell the

authorities anything about crimes that he purportedly committed with her son, Cain. Jr.

Citing United States v. Farrell, 126 F.3d 484 (3d Cir. 1997), Ann Cain argues that she was simply reminding Cooper of his rights, and that her advice that he remain silent did not amount to "corrupt persuasion" within the meaning of the statute.  In Farrell, a divided panel of the Third Circuit found that the term "corruptly persuades" does not include a non-coercive attempt to persuade a co-conspirator who could legitimately invoke his Fifth Amendment right not to disclose inculpatory information.

As the government correctly notes, Farrell is inconsistent with the Second Circuit's understanding of "corrupt persuasion" as explicated United States v. Thompson, 76 F.3d 442 (2d Cir. 1996). In Thompson, the Second Circuit explained that § 1512(b) does not criminalize all persuasion, just "corrupt" persuasion. "The inclusion of the qualifying term 'corrupt[ ]' means that the government must prove that the defendant's attempts to persuade were motivated by an improper purpose." Id. at 452.  The Third Circuit's interpretation of  "corrupt persuasion" differs from that of the Second Circuit, and this Court adheres to Second Circuit authority.  See also United States v. Shotts, 145 F.3d 1289, 1300-01 (11th Cir.1998) (preferring the Second Circuit's position in Thompson over the Third Circuit's position in Farrell).  Accordingly, under the law

13

of this Circuit, the jury was entitled to find Ann Cain guilty under the evidence presented provided that they also found that her attempts to persuade Cooper were motivated by an improper purpose.

Alternatively, Ann Cain argues that a new trial is warranted because the jury instruction as to Count 3 was deficient in that it failed to advise the jury that innocent advice is not corrupt persuasion. The Court finds that the jury instruction for Count 3 was proper. Consistent with the Second Circuit's holding in Thompson, the Court instructed the jury that "to corruptly persuade" means "to act knowingly with a wrongful, immoral or evil purpose to convince or induce another person to engage in certain conduct," and that "corrupt persuasion requires a consciousness of wrongdoing by the defendant." This definition was an adequate statement of the law and advised the jury that they could not find her guilty unless they were satisfied that she acted with an improper purpose. Because the jury was told that they had to find that Ann Cain acted with "a wrongful, immoral or evil purpose" and with "consciousness of [her] wrongdoing," it would have been superfluous to also advise the jury that innocent advice would not satisfy the element. Moreover, Ann Cain did not request such an instruction or object to the charge that was given.

## **CONCLUSION**

Accordingly, for the reasons stated, the Court hereby denies Ann

Cain's motions to dismiss the indictment, for judgment of acquittal and a new trial.

The parties shall appear for sentencing on February 9, 2007, at 12:30 p.m.

IT IS SO ORDERED.

_____ /s/ *Richard J. Arcara*

HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: January 10, 2007

15